ZECHARIAH CHAFEE vs. WILLIAM H. MAKER et al.

| | |
|---|---|
| 17 | 739 |
| 18 | 49 |
| a18 | 437 |
| 18 | 444 |
| 17 | 739 |
| 19 | 506 |
| 17 | 739 |
| 20 | 451 |
| 17 | 739 |
| 21 | 194 |
| 17 | 739 |
| 26 | 346 |

Residuary testamentary disposition as follows : —

"I give and bequeath unto Robert Knight, of said Providence, all the residue and remainder of my estate in trust, to be managed by him to the best advantage, and to appropriate the income of the same for the support and maintenance of the aforenamed Julia Ann Maker for and during her natural life ; and if the income thereof is not sufficient to give her a comfortable support and maintenance, then to use the principal for that purpose, to be at his discretion to do as he may think proper and right in regard to the matter ; and if there should be anything remaining at the decease of said Julia Ann Maker, then I give and bequeath such residue and remainder to the aforenamed Mary S. Dean, her heirs and assigns forever, provided the amount does not exceed three thousand dollars ; and all over and above said three thousand dollars I give and bequeath to the children of my nephews and nieces aforenamed in equal proportions, including the children of said Julia Ann Maker and the children of said Mary Field, deceased ; and if any of said children should die, then the proportion of such as shall die to go to their surviving brothers and sisters in equal proportions to each."

Held, that the legacy of $3,000 to Mary S. Dean vested on the testator's death, payment only being deferred till the death of Julia Ann Maker.

Mary S. Dean died during the lifetime of Julia Ann Maker.

Held, that the legacy of $3,000 to Mary S. Dean should be paid to her administrator, with interest from the death of Julia Ann Maker.

Mary S. Dean and her husband being indebted to the testator's estate for money borrowed and used in purchasing a farm conveyed to Mary S. Dean,

Held, that the amount of this indebtedness should be deducted from the legacy of $3,000 to Mary S. Dean.

Of the words in the residuary clause, "I give and bequeath to the children of my nephews and nieces aforenamed,"

Held, that the word "aforenamed" referred to "nephews and nieces," and not to "children."

Held, further, that Julia Ann Maker in her own right, if living, would not be, and that any the issue or representative of such of the children of the testator's nephews and nieces as die in the lifetime of Julia Ann Maker is not, entitled to any part of the trust estate, except that the legal representatives of the last surviving child of Mary Field, and of the last surviving child of Calvin Macomber, a nephew, are entitled to share.

Specific instructions for the distribution of the trust fund given, and the reasons for them explained.

BILL IN EQUITY for instructions.

Calvin Dean died May 6, 1856, leaving a last will, dated September 14, 1854, which was proved before the Municipal Court of the city of Providence, June 10, 1856. By this will he made certain specific gifts, directed his executor to sell all the rest of his estate, and from the proceeds made a large number of pecuniary legacies, many of them to his nephews and nieces. The residuary disposition was as follows: —

" I give and bequeath unto Robert Knight, of said Providence, all the residue and remainder of my estate in trust, to be managed by him to the best advantage, and to appropriate the income of the same for the support and maintenance of the aforenamed Julia Ann Maker for and during her natural life; and if the income thereof is not sufficient to give her a comfortable support and maintenance, then to use the principal for that purpose, to be at his discretion to do as he may think proper and right in regard to the matter; and if there should be anything remaining at the decease of said Julia Ann Maker, then I give and bequeath such residue and remainder to the aforenamed Mary S. Dean, her heirs and assigns forever, provided the amount does not exceed three thousand dollars; and all over and above said three thousand dollars I give and bequeath to the children of my nephews and nieces aforenamed in equal proportions, including the children of said Julia Ann Maker and the children of said Mary Field, deceased; and if any of said children should die, then the proportion of such as shall die to go to their surviving brothers and sisters in equal proportions to each."

Robert Knight died, and Zechariah Chafee was by this court, at its March Term, A. D. 1869, appointed trustee in his place. Zechariah Chafee died March 30, A. D. 1889, testate, appointing his son Zechariah his executor, who as such took possession of the trust estate and managed it. He filed this bill for instructions after the death of Julia Ann Maker. Julia Ann Maker was a daughter of Calvin Macomber, who was a nephew of the testator.

*June* 20, 1892. MATTESON, C. J. The court decides the questions submitted, and instructs the complainant, as follows: —

*First.* That the legacy of $3,000, bequeathed to Mary S. (Dean) Rounds in the residuary clause of the will of Calvin Dean, vested

in her on the death of the testator, although the payment of it was postponed until the death of Julia Ann Maker. The language of the bequest is, " If there should be anything remaining at the decease of said Julia Ann Maker, then I give and bequeath such residue and remainder to the aforenamed Mary S. Dean, her heirs and assigns forever, provided the amount does not exceed three thousand dollars." A bequest after the death of a particular person, where an antecedent interest is given in the same will, is generally held not to denote a condition that the legatee shall survive such person, nor to define when the legacy shall vest, but only to mark the time when the gift shall take effect in possession ; that possession being deferred merely on account of the life interest limited to the person on whose death the gift is to take effect. *Chew's Appeal*, 37 Pa. St. 23 ; *King* v. *King*, 1 W. & Serg. 205 ; *Minnig* v. *Batdorf*, 5 Pa. St. 506 ; *Doe, Lessee of Poor*, v. *Considine*, 6 Wall. 458 ; *Johnson* v. *Valentine*, 4 Sandf. 36 ; *Rives* v. *Frizzle*, 8 Ired. Eq. 237 ; *Ferson* v. *Dodge*, 23 Pick. 287, 292 ; *Moore* v. *Dimond*, 5 R. I. 121, 129 ; *Rogers* v. *Rogers*, 11 R. I. 38, 72.

That Mary S. (Dean) Rounds having died during the life of Julia Ann Maker on August 25, 1886, and Julia Ann Maker having also died on February 15, 1891, said legacy of $3,000 is now payable to Thomas M. Rounds, administrator with the will annexed upon the estate of the said Mary S. (Dean) Rounds. Woerner's American Law of Administration, vol. 2, § 460, states it as a proposition requiring no demonstration, that when a legatee dies after the testator's death, his personal representative alone is entitled to collect his legacy, not his distributees. And see *Purcelly* v. *Carter*, 45 Ark. 299, 302.

That interest on the $3,000 is payable from February 15, 1891, the day of the death of Julia Ann Maker, that being the date when the $3,000 became payable. The general rule is, that interest is due from the time a legacy is payable. *Hearle* v. *Greenbank*, 3 Atk. 695, 716 ; *Wordsworth* v. *Younger*, 3 Ves. Jun. 73 ; *Ballantyne* v. *Turner*, 6 Jones Eq. 224 ; *Kent & Dunham* v. *Dunham*, 106 Mass. 586 ; *Bradner* v. *Faulkner*, 12 N. Y. 472 ; *Lupton* v. *Lupton*, 2 Johns. Ch. 614 ; *Dodge* v. *Manning*, 1 N. Y. 298 ; *Wheeler* v. *Ruthven*, 2 Redf. Surrog. Rep. N. Y. 491. And when

the payment of a legacy is postponed by reason of an intervening estate, or other cause, beyond a year after the testator's death, it becomes payable immediately upon the accruing of the right, and interest is payable from that date. 2 Redfield on Wills, 2d ed. 466; *Laundy* v. *Williams*, 2 P. Wms. 478, 481; *Miller* v. *Philip*, 5 Paige, 573.

That it appearing from the testimony submitted that the note of said Thomas M. Rounds and Mary S. Rounds for $1,500, secured by mortgage on the farm in North Kingstown, purchased by and conveyed to said Mary S. Rounds, and the note of said Thomas M. Rounds for $117.50, indorsed by said Mary S. Rounds, held by the complainant as a part of the trust estate, were given on account of the purchase-money for said farm, and were, therefore, equitably the debt of said Mary S. Rounds, the amount due on said notes may be retained by the complainant out of the $3,000 and interest payable to said Thomas M. Rounds, administrator as aforesaid for said legacy. *Perkins* v. *Se Ipsam*, 11 R. I. 270, 271; *Armour* v. *Kendall*, 15 R. I. 193, 194.

*Second.* That the word " aforenamed " in the latter part of the residuary clause of said will refers to the words "nephews and nieces," immediately preceding, and not to the word " children." The provision is as follows : " and all over and above said three thousand dollars I give and bequeath to the children of my nephews and nieces aforenamed, in equal proportions, including the children of said Julia Ann Maker and the children of said Mary Field, deceased." To regard the word " aforenamed " as referring to the words " nephews and nieces " would be the obvious natural construction from the grammatical relation of the words. This construction is confirmed by a careful examination of the will as a whole. It was the evident scheme of the testator to treat his nephews and nieces, and also in general their children, and also including the children of Julia Ann Maker and Mary Field, alike. This appears from the fact that he gives to each of his nephews and nieces $1,000, and that with two exceptions, viz., the children of his niece, Abigail Clark, deceased, and of his niece, Maria Sampson, to each of whom he gives $633.33, he gives to each of the children of his nephews and nieces $300, and a like sum to each of the children of the said Julia Ann Maker, and to each of

the children of the said Mary Field, putting the children of the last two named, who were not nieces but daughters of nieces, upon the same footing in the sharing of his bounty as though they were children of nephews or nieces. Although he does not mention the names of the children of his nephews, Calvin Macomber, John Macomber, and Luther Macomber, and of his nieces, Betsey Castle and Abigail Stevens, as he did in the cases of the children of his other nephews and nieces, but gives to each of them as members of a class, there does not appear to have been any reason for the difference. It may be conjectured that he did not have a _memorandum_ of their names at hand, or that he thought the gifts to them would be as effectual as if their names were specified, and omitted to mention them for that reason. But, whatever may have been the reason, we see nothing in the circumstance to lead us to suppose that he intended to cut off the children of these nephews and nieces from the benefits of the provision in question. If the word " aforenamed " be construed as referring to " nephews and nieces," instead of to " children," all the children of his nephews and nieces, together with the children of Julia Ann Maker and of Mary Field, are constituted a class, each of whom would receive an equal share with the rest, and thus the general intent of the testator, apparent in the earlier portions of the will, would be preserved.

_Third._ That neither the issue nor representatives of such of the children of the testator's nephews and nieces as died in the life of Julia Ann Maker are, nor is any, nor either of them, entitled to any part of the trust estate ; there being an express limitation over of the proportion of such as shall die to their surviving brothers and sisters. That the legal representatives of Harrison D. Field, the last surviving child of Mary Field, and of Julia Ann Maker, the last surviving child of Calvin Macomber, are entitled to share in the residue of the trust estate as set forth in the next succeeding paragraph.

_Fourth._ That the residue of the trust estate, after payment of the legacy of $3,000 to Mary S. (Dean) Rounds, is to be divided into as many parts as there were children of the testator's nephews and nieces, including also the children of Julia Ann Maker and of Mary Field, living at his decease, but excluding the said Julia Ann Maker ; and that each of such children, living at the decease

of Julia Ann. Maker, is entitled to receive one of such parts. That the proportions of such of the children as died during the life of Julia Ann Maker shall be paid to his, her, or their brother or sister surviving at the death of Julia Ann Maker, if there be but one, and, if more than one, shall be equally divided between the survivors. That all the children of Mary Field having died during the life of Julia Ann Maker, their proportion of said residue is to be paid to the legal representative of the last survivor of them, Harrison D. Field, or, should it appear that there are no outstanding claims against his estate, to his widow, Ann M. Field, and to Daniel M. Remington, guardian of his minor children, viz., Leonard R. Field, Maude M. Field, Mabel F. Field, and Lyman H. Field, in the proportions in which they are entitled to it under the statute for the distribution of the~ surplus of intestate estate. Pub. Stat. R. I. cap. 187, § 9. That the proportion of said residue of the trust estate to which the two sons of the testator's nephew, Calvin Macomber, would have been entitled had they survived their sister, Julia Ann Maker, is to be paid to the legal representatives of Julia Ann Maker, unless it shall be made to appear that there are no outstanding claims against her estate, in which event it may be paid to her sons, William H. Maker and Amos Maker, in equal shares.

The considerations which have led us to the conclusions stated in the preceding paragraphs, *third* and *fourth*, are as follows : We had already reached the conclusion that the $3,000 bequeathed to Mary S. (Dean) Rounds vested in her on the death of the testator, although the payment of it was postponed until the death of Julia Ann Maker. The same reasons for holding that legacy to have vested in her apply equally in favor of holding that the excess of the trust estate over $3,000 vested in the children of the testator's nephews and nieces, and the children of Julia Ann Maker and of Mary Field, at his decease. We therefore so hold. Having so vested, the proportion of each remained vested until divested in accordance with the limitation contained in the will, viz., " and if any of said children should die, then the proportion of such as shall die to go to their surviving brothers and sisters in equal proportions to each." Originally the courts held that words of survivorship in gifts of this nature were to be referred to the death

of the testator, and therefore that the legatees surviving the testator took as tenants in common; and in the event of the death of either before the termination of the life, or other particular interest, the share of the one so dying passed to his legal representative. Subsequently a distinction was made between those cases in which the gift was immediate, that is, took effect in possession upon the death of the testator, and those in which possession was deferred until the termination of a life or other limited interest; in the former, the words of survivorship still continued to be referred to the death of the testator, while in the latter they were referred to the time of distribution. Still later, it was held that where the gift is, not to several or the survivors, but to several, and if any of them die before the tenant for life, to the survivors, that the words of survivorship are to be referred to the survival of the legatees *inter sese*, and not to their survival at the death of the tenant for life. This was in the case of *White* v. *Baker*, 2 DeG. F. & J. 55, in which the gift was to A. for life, and, after her death, in trust to pay the same to B. and C. in equal shares; and in case of the death of either of them in the life of A., then in trust to pay the same to the survivor of them, the said B. and C., his executors, administrators, or assigns. The court held that on the death of B. in the life of A. the whole vested absolutely in C., and was not liable to be divested if he afterwards died during the lifetime of A. Lord Justice Turner remarked in his opinion, that " where there is a bequest to A. for life, and after his death to B. and C. or the survivor of them, some meaning must of course be attached to the words 'the survivor.'" They may refer to any one of three events, — to one of the persons named surviving the other, to one of them only surviving the testator, to one of them only surviving the tenant for life; and, in the absence of any indication to the contrary, they are taken to refer to the latter event as being the more probable one to have been referred to; but where, as in the present case, the bequest is to A. for life, and after his death to B. and C., and, in case either of them dies in the lifetime of A., the whole to the survivor, it is plain that the words in their natural import refer to the one surviving the other, and the question is not to which of the events above mentioned the testator intended to refer, but whether there is any context to alter the ordinary mean-

ing of the words which he has used. And see, also, *Scurfield* v. *Howes*, 3 Bro. Ch. 90 ; *Antrobus* v. *Hodgson*, 16 Sim. 450 ; 2 Jarman on Wills, *721–*743, where the cases are collected and discussed. The gift in the present case is substantially the same as that in *White* v. *Baker*, except that the limitation over, instead of being to the survivors generally, is to the surviving brothers and sisters of such as shall die. This restriction upon the limitation does not militate against the construction that the survivorship intended was the survival among the legatees themselves rather than of their surviving the tenant for life, but might, perhaps, be regarded as strengthening that view.

We exclude Julia Ann Maker from taking a share of the bequest in her own right, although she is within the description of the class specified in the bequest, *i. e.* children of the testator's nephews and nieces, she having been the daughter of Calvin Macomber, a nephew. We think that the inclusion of her children in the bequest manifests an intent on the part of the testator that she was not to take, and therefore the case is not within the ordinary rule relative to gifts to a class.

*James Tillinghast & Theodore F. Tillinghast*, for complainant.

*Isaac H. Southwick, Jun.*, for respondent, Thomas M. Rounds.

*John W. Taylor & Henry B. Taylor*, for some of the other respondents.